UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

     -v-                  :      <u>SUPERSEDING INDICTMENT</u>

MICHAEL J. MITROW, JR.,     :      S1 13 CR. 633 (PAE)
MATTHEW J. MITROW, and
ROBERT T. MADISON,        :

      Defendants.     :

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 1 2 2013

## BACKGROUND REGARDING THE DEFENDANTS AND THE RELEVANT ENTITIES

### The Defendants and Other Individuals and Entities

1.    MICHAEL J. MITROW, JR. ("MICHAEL MITROW"), the defendant, was the founder of a marketing agency that specialized in providing marketing solutions to the pharmaceutical industry (the "Marketing Agency"). From in or about 1998 to in or about June 2009, MICHAEL MITROW was the President and Chief Executive Officer (CEO) of the Marketing Agency.

2.    MATTHEW J. MITROW ("MATTHEW MITROW"), the defendant, was a Partner and Executive Vice President of the Marketing Agency from in or about 2002 through in or about July 2010.

3.    ROBERT T. MADISON, the defendant, was the owner and operator, from in or about March 2001 through in or about August 2009, of two printing and direct mailing companies: "Madison

1

Company A" and its predecessor company, "Madison Company B."  At all times relevant to this Indictment, Madison Company A and Madison Company B provided printing and direct mailing services to the Marketing Agency. MADISON also owned and operated a company called "Madison Company C," a company he used to conceal payments to MICHAEL MITROW.

4.    From in or about 2004 through in or about 2009, the Marketing Agency was retained by a pharmaceutical company with its United States headquarters in New York, New York (the "Pharmaceutical Company") to design and execute marketing campaigns to promote specific products to union members and certain identified physicians.  The Pharmaceutical Company paid the Marketing Agency over $30 million for these labor union marketing campaigns.  The Marketing Agency, in turn, retained Madison Company A to collect, print, assemble, and mail the Pharmaceutical Company's marketing materials.

### Background on the Marketing Agency

5.    In or about 1998, MICHAEL MITROW, the defendant, and another individual ("Individual-A") founded the Marketing Agency.  In or about 2006, the owners of the Marketing Agency, including MICHAEL MITROW and MATTHEW MITROW, the defendants, sought an outside buyer to purchase an equity stake in the company.  Initially, a private equity firm approached the

Marketing Agency, but abandoned the sale when the private equity
firm discovered that Individual-A had an ownership interest in
the Marketing Agency.  After the sale fell apart, Individual-A
agreed to leave the Marketing Agency.

6.   On or about April 20, 2007, MICHAEL MITROW and MATTHEW
MITROW, the defendants, and others, sold a substantial portion
of their respective interests in the Marketing Agency to the
private equity firm.  As part of the agreement, MICHAEL MITROW
was paid $24.7 million, but stayed on as President and CEO with
a $400,000 annual salary.  MATTHEW MITROW received at least $5.7
million from the sale, and also remained an Executive Vice
President.

7.   As a condition of the sale, the private equity firm
required that, if any payments were made by prior management of
the Marketing Agency, including MICHAEL MITROW and MATTHEW
MITROW, to Individual-A or his company after the date of the
sale, the prior management was required to pay to the private
equity firm a penalty of five times any payment to Individual-A
or his company.

OVERVIEW OF THE DEFENDANTS' ILLEGAL SCHEMES

8.   As set forth more fully below, MICHAEL MITROW, MATTHEW
MITROW, and ROBERT T. MADISON, the defendants, engaged in
certain schemes to defraud the Marketing Agency and the

3

Pharmaceutical Company.   In particular, MADISON, and others,
engaged in a scheme to defraud the Marketing Agency and the
Pharmaceutical Company by submitting fraudulent invoices for
millions of dollars for services that were substantially
underperformed, and at times not performed.   MADISON then used
the money generated from that scheme to pay kickbacks to MICHAEL
MITROW, MATTHEW MITROW, and others, so that MICHAEL MITROW and
MATTHEW MITROW would continue to steer the Marketing Agency's
business to Madison Company A.   In addition, MICHAEL MITROW
engaged in a scheme to defraud the Marketing Agency by
submitting to the Marketing Agency bogus invoices for purported
consulting services when, in truth and in fact, the invoices
were for private jets that MICHAEL MITROW had chartered for his
and others' personal use.

The Fraudulent Madison Company A Billing Scheme

     9.   From in or about 2005 through in or about 2009, ROBERT
T. MADISON, the defendant, engaged in a scheme to defraud the
Marketing Agency and the Pharmaceutical Company by submitting
millions of dollars of fraudulent invoices to the Marketing
Agency for printing and mailing services that Madison Company A
had purportedly provided on behalf of the Marketing Agency and
the Pharmaceutical Company.

10.   In truth and in fact, however, many of the invoices that ROBERT T. MADISON, the defendant, submitted and caused to be submitted to the Marketing Agency reflected work that Madison Company A did not actually perform, or overcharged for projects that were only partially performed, including inflating the actual cost of postage Madison Company A purportedly paid to the United States Postal Service.   In many instances, instead of providing the direct mailing services paid for by the Marketing Agency, MADISON caused tons of marketing materials to be discarded and recycled.

11.   In total, from in or about November 2004 to in or about May 2009, MADISON caused Madison Company A to bill the Marketing Agency approximately $7.7 million.   Of the $7.7 million in invoices, approximately $7.4 million were fraudulent.

12.   In furtherance of the fraudulent scheme, ROBERT T. MADISON, the defendant, took steps to conceal the fact that Madison Company A was not, in fact, providing the services for which it was billing the Marketing Agency and for which Madison Company A ultimately received payment from the Marketing Agency.

13.   By way of example, beginning in or about November 2007, in the course of audits by the Pharmaceutical Company of the Marketing Agency, the Pharmaceutical Company requested documentation confirming that Madison Company A was mailing the

5

marketing materials as required under the contracts between the Marketing Agency and the Pharmaceutical Company.  Among other things, the Pharmaceutical Company requested copies of United States Postal Form 3602 ("Form 3602") -- a receipt from the United States Post Office given to a mailer as confirmation of a mailing, showing the number of pieces mailed, the weight of the mailing, the date the post office accepted the mailing, and the total cost of the mailing.  At the direction of ROBERT T. MADISON, the defendant, a Madison Company A employee created more than 50 fictitious and fraudulent Forms 3602, which were then submitted to the Marketing Agency and to the Pharmaceutical Company.

The Kickback Scheme

14.  From in or about February 2007 through in or about January 2009, MICHAEL MITROW, MATTHEW MITROW and ROBERT T. MADISON, the defendants, engaged in a scheme to commit honest services fraud by having MADISON pay undisclosed kickbacks to, or for the benefit of, MICHAEL MITROW and MATTHEW MITROW, in exchange for MICHAEL MITROW and MATTHEW MITROW steering business from the Marketing Agency to MADISON's company.  MICHAEL MITROW, MATTHEW MITROW, and MADISON took various steps to conceal from the Marketing Agency the kickback payments from MADISON.  Among other things, they caused the payments to be made through

6

Madison Company C rather than Madison Company A; they caused payments to be made to third parties on behalf of MICHAEL MITROW and MATTHEW MITROW rather than directly to them; and they routed kickback payments through companies controlled by MICHAEL MITROW and others.

15. Among the kickbacks that ROBERT T. MADISON, the defendant, paid to or for the benefit of MICHAEL MITROW and MATTHEW MITROW, the defendants, were the following:

a. From in or about February 2008 through in or about August 2008, MADISON caused Madison Company A, through the bank account of Madison Company C, to make approximately $750,000 in payments to a private jet charter company ("the Jet Charter Company") for private jet travel by MICHAEL MITROW and his friends and relatives.

b. In or about February 2007 through in or about February 2008, MADISON caused Madison Company A to make approximately $685,000 in payments to an entity controlled by Individual-A, to secretly compensate Individual-A for relinquishing his share of ownership in the Marketing Agency.

c. From in or about October 2008 through in or about January 2009, MADISON caused Madison Company A to make payments of approximately $426,000 to a company that MICHAEL MITROW owned and controlled.

7

d.   In or about November 2008, MADISON caused Madison Company C to pay $100,000 to a company controlled by an individual with whom MICHAEL MITROW had a personal relationship.

e.   From in or about February 2008 through in or about January 2009, MADISON caused Madison Company A to make more than $130,000 in payments to or for the benefit of MATTHEW MITROW, including but not limited to: a $43,605 payment to a private jet charter; approximately $39,000 in payments to two New Jersey contractors for home renovations; a $19,000 payment to a New York City "gentlemen's club" to settle an outstanding bill; and $30,000 to Bank of America to pay off credit card debts of MATTHEW MITROW and his wife.

The Fraudulent Private Jet Billing Scheme

16.   At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1") was the owner of the Jet Charter Company used by MICHAEL MITROW and MATTHEW MITROW for personal jet travel.  MICHAEL MITROW, the defendant, engaged in a scheme to defraud the Marketing Agency by causing it to pay fraudulent invoices for purported consulting work when, in reality, the payments were to pay the Jet Charter Company for MICHAEL MITROW'S personal private jet charters.

17.  Specifically, from in or about June 2006 through in or about June 2009, MICHAEL MITROW, the defendant, arranged for private jet travel for himself, his family and friends, and others, through CC-1 and the Jet Charter Company.  The total cost of this travel exceeded $1 million.  In or around June 2008, in order to fraudulently induce the Marketing Agency to pay the Jet Charter Company for a portion of his private jet charters, MICHAEL MITROW instructed CC-1 to issue a series of false and fraudulent invoices to the Marketing Agency.  The invoices were issued in the names of several fictitious companies and sought payment for purported pharmaceutical consulting services that were never actually provided.  In total, from in or around October 2008 through in or around May 2009, CC-1 and MICHAEL MITROW submitted and caused to be submitted to the Marketing Agency at least eight fraudulent invoices totaling approximately $618,250, which were paid by the Marketing Agency.

COUNT ONE
(Conspiracy to Commit Wire and Mail Fraud – ROBERT T.
MADISON)

The Grand Jury charges:

18.   The allegations contained in paragraphs 1 through 15, are realleged and incorporated as though fully set forth in this paragraph.

19.   From in or about November 2004 through in or about June 2009, in the Southern District of New York and elsewhere, ROBERT T. MADISON, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, to wit, ROBERT T. MADISON, while the owner of Madison Company A, together with others known and unknown, defrauded the Marketing Agency into paying inflated or false invoices for services that were underperformed or altogether not performed.

20.   It was a part and an object of the conspiracy that ROBERT T. MADISON, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses,

10

representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

21.    It was further a part and an object of the conspiracy that ROBERT T. MADISON, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of

executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

<u>OVERT ACTS</u>

22.   In furtherance of the conspiracy and to effect its illegal objects, ROBERT T. MADISON, the defendant, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about March 9, 2009, MADISON caused fraudulent Forms 3602 to be emailed to the Marketing Agency who then provided the false Forms 3602 to the Pharmaceutical Company in Manhattan, New York.

b.   On or about December 10, 2008, MADISON caused Madison Company A to send Invoice #31754 to the Marketing Agency for $187,420.00.

c.   On or about January 9, 2009, MADISON caused the Marketing Agency to issue a check on a checking account maintained in Manhattan, New York for $187,420 in payment for Madison Company A invoice #31754.

(Title 18, United States Code, Section 1349.)

12

COUNT TWO
(Conspiracy to Commit Honest Services Fraud – MICHAEL MITROW,
MATTHEW MITROW, ROBERT T. MADISON)

The Grand Jury further charges:

23.    The allegations contained in paragraphs 1 through 11, 14 and 15, are realleged and incorporated as though fully set forth in this paragraph.

24.    From in or about November 2004 through in or about June 2009, in the Southern District of New York and elsewhere, MICHAEL MITROW, MATTHEW MITROW and ROBERT T. MADISON, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit honest services fraud, mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341, 1343 and 1346, to wit, MICHAEL MITROW, while the CEO of the Marketing Agency, and MATTHEW MITROW, while the Executive Vice President of the Marketing Agency, received kickbacks that MADISON caused Madison Company A to pay.

25.    It was a part and an object of the conspiracy that MICHAEL MITROW, MATTHEW MITROW, and ROBERT T. MADISON the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the Marketing Agency of the intangible right of honest services, and for obtaining money and

13

property by means of false and fraudulent pretenses, representations, and promises, would and did place in a post office and authorized depository for mail matter, matters and things to be sent and delivered by the Postal Service, and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, and at the places at which they were directed to be delivered by the persons to whom they were addressed, such matters and things, in violation of Title 18, United States Code, Section 1341.

26.    It was a part and an object of the conspiracy that MICHAEL MITROW, MATTHEW MITROW and ROBERT T. MADISON, the defendants, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the Marketing Agency of the intangible right of honest services, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the

14

purpose of executing such scheme and artifice in violation of Title 18, United States Code, Section 1343.

## Overt Acts

27.   In furtherance of the conspiracy and to effect its illegal objects, MICHAEL MITROW, MATTHEW MITROW, and ROBERT T. MADISON, the defendants, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about December 5, 2007, MADISON caused Madison Company A to wire $52,000 to the bank account of Individual-A's company.

b.   In or about November 2008, MICHAEL MITROW caused MADISON to pay $100,000 to a company controlled by an individual with whom MICHAEL MITROW had a personal relationship.

c.   On or about January 14, 2009, MADISON caused Madison Company A to issue Check 7471841 to a "gentlemen's club" located in Manhattan, New York, for $19,000 on behalf of MATTHEW MITROW.

(Title 18, United States Code, Section 1349.)

## COUNT THREE
(Conspiracy to Commit Wire Fraud – MICHAEL MITROW)

The Grand Jury further charges:

28.   The allegations contained in paragraphs 1, 8, 16, and 17 are realleged and incorporated as though fully set forth in this paragraph.

15

29.  From in or about June 2008 through in or about May 2009, in the Southern District of New York and elsewhere, MICHAEL MITROW, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, to wit, MICHAEL MITROW and at least one other conspirator deceived the Marketing Agency into paying for MICHAEL MITROW's private jet travel by submitting fraudulent invoices for consulting services that were not performed.

30.  It was a part and an object of the conspiracy that MICHAEL MITROW, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## OVERT ACTS

31.   In furtherance of the conspiracy and to effect its illegal object, MICHAEL MITROW, the defendant, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about October 24, 2008, CC-1 faxed fraudulent invoice #15876 for $78,350 to MICHAEL MITROW.

b.   On or about November 3, 2008, CC-1 faxed fraudulent invoice #15905 for $69,150 to MICHAEL MITROW.

c.   On or about December 9, 2008, MICHAEL MITROW caused Marketing Agency to issue Check 62482 on a checking account maintained in its bank located in Manhattan, New York for $147,500 as payment for fraudulent invoices #15876 and #15905.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
(Corruptly Endeavoring to Obstruct and Impede the
Due Administration of Internal Revenue Laws – MICHAEL MITROW)

The Grand Jury further charges:

32.   The allegations set forth in paragraphs 1 - 17 are realleged and incorporated as though fully set forth in this paragraph.

## Background

33.   The Internal Revenue Service ("IRS") is a constituent agency of the United Department of Treasury responsible for

17

administering and enforcing the tax laws of the United States
and collecting the taxes owed to the Treasury of the United
States by taxpayers, including both individuals and
corporations.

34.   From at least October 2006 through in or about June
2009, MICHAEL MITROW, the defendant, misappropriated corporate
funds from the Marketing Agency for his personal use by
repeatedly using his corporate credit card to charge hundreds of
thousands of dollars in personal expenses.  MICHAEL MITROW then
concealed this use from his partners, his employer, and the IRS
by intentionally miscoding personal expenses as specific
corporate project and general business development expenses.

35.   For example, MICHAEL MITROW, the defendant, used his
corporate credit card to pay personal expenses, including but
not limited to airfare, lodging, dining, and retail purchases
for himself, family members and others with whom he had personal
relationships.

<u>STATUTORY ALLEGATIONS</u>

36.   From in or about January 2006 through in or about
November 2010, in the Southern District of New York and
elsewhere, MICHAEL MITROW, the defendant, willfully and
knowingly did corruptly obstruct and impede, and endeavor to

obstruct and impede, the due administration of the internal revenue laws, to wit,

a.    with knowledge that only personal expenses purchased on his corporate credit card specifically identified to the Marketing Agency would be accounted for and reflected as income on his Form W-2, falsely claiming that purchases were business expenses related to various pharmaceutical companies' projects;

b.    by falsely omitting income received as a result of his kickback schemes and from use of his corporate credit card for personal expenses on his 2007, 2008, and 2009 U.S. Individual Income Tax Returns, Forms 1040 ("Form 1040s");

c.    by falsely claiming a total income (Line 22) on his 2008 Form 1040 of $2,646,774, and a total income (Line 22) on his 2009 Form 1040 tax return of -$262,378.

(Title 26, United States Code, Section 7212(a).)

## COUNT FIVE
### (Tax Evasion - MICHAEL MITROW)

The Grand Jury further charges:

37.    The allegations set forth in paragraphs 1 - 17 and 33 through 35 are realleged and incorporated as though fully set forth in this paragraph.

38.    From in or about January 2008 through in or about October 2009, in the Southern District of New York and elsewhere, MICHAEL MITROW, the defendant, willfully and

19

knowingly did attempt to evade and defeat a substantial part of the income tax due and owing by him to the United States of America for calendar year 2008, by various means, including, among others:

a.   causing kickback payments to be made by Madison Company A and ROBERT T. MADISON, the defendant, to others to pay for private jet travel by MICHAEL MITROW and his family and friends;

b.   causing payments to be made by the Marketing Agency to others for private jet travel by MICHAEL MITROW and his family and friends;

c.   using his corporate American Express card for personal expenses and falsely characterizing those expenses to the Marketing Agency as business expenses;

d.   causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the IRS a 2008 false and fraudulent joint U.S. Individual Income Tax Return, Form 1040, for the 2008 tax year, which substantially understated defendant MICHAEL MITROW's taxable income and tax due and owing, resulting in substantial taxes due and owing;

e.   taking various steps to conceal from the IRS the true facts relating to his income, including causing the Marketing Agency to create and file an inaccurate Form W-2 for the 2008

20

tax year by falsely coding personal expenses on credit card statements as business expenses for the Marketing Agency.

(Title 26, United States Code, Section 7201.)

## FORFEITURE ALLEGATION

39.   As a result of committing the conspiracy offenses, in violation of Title 18, United States Code Sections 1349 set forth in Counts One through Three of this Indictment, MICHAEL MITROW, MATTHEW MITROW, and ROBERT MADISON, the defendants, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses, including, but not limited to  $7,400,000 in United States currency, in that such sum in aggregate is property representing the amount of proceeds obtained as a result of the offenses for which the defendants are jointly and severally liable.

## Substitute Asset Provision

40.   If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty;

f.    it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18 United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461.)


FOREPERSON

PREET BHARARA
United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

## UNITED STATES OF AMERICA

-v-

## MICHAEL J. MITROW, JR.,
## MATTHEW J. MITROW, and
## ROBERT T. MADISON,

**Defendants.**

## SUPERSEDING INDICTMENT
(18 U.S.C. § 1349;
26 U.S.C. § 7201;
26 U.S.C. § 7212(a))

PREET BHARARA
United States Attorney.

**A TRUE BILL**

Foreperson

Sept 12, 2013   Filed S(1) indictment

Arrest warrants issued   A Dect usmT