F16UMADP

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA

 4              v.                          13 CR 633(PAE)

 5   ROBERT T. MADISON,

 6              Defendant.

 7   ------------------------------x

 8                                    New York, N.Y.
                                      January 6, 2015
 9                                    4:00 p.m.

10

11   Before:

12                   PAUL A. ENGELMAYER

13
                                     District Judge
14

15                      APPEARANCES

16   PREET BHARARA
          United States Attorney for the
17        Southern District of New York
     BY:  NANETTE L. DAVIS
18        Senior Litigation Counsel
          Department of Justice
19
     SERCARZ & RIOPELLE, L.L.P.
20        Attorneys for Defendant
     BY:  ROLAND G. RIOPELLE
21

22

23

24

25

F16UMADP

1              THE DEPUTY CLERK:  United States v. Robert T. Madison,

2   13 Crim. 633.

3              Is the government ready?

4              MS. DAVIS:  Yes.

5              Good afternoon, your Honor.

6              Nanette Davis for the United States.

7              THE COURT:  Good afternoon, Ms. Davis.

8              THE DEPUTY CLERK:  For the defendant?

9              MR. RIOPELLE:  Yes.  Roland Riopelle for the

10   defendant.

11              THE COURT:  Good afternoon, Mr. Riopelle.

12              And good afternoon to you, Mr. Madison.

13              I have been informed, Mr. Riopelle, that your client

14   wishes to plead guilty to Count 2 of the superseding indictment

15   in this case.  Is that correct?

16              MR. RIOPELLE:  That is correct, your Honor.  At this

17   point, the client wishes to withdraw his previously entered not

18   guilty plea in this case and enter a plea of guilty to Count 2,

19   pursuant to a plea agreement in satisfaction of the charges

20   pending against him.

21              THE COURT:  Very good.

22              Mr. Madison, is that correct?

23              THE DEFENDANT:  Yes, your Honor.

24              THE COURT:  Counsel, can you hand up the signed plea

25   agreement.  I have a copy.  Let me take the signed version.

F16UMADP

1              Counsel, I take it the plea agreement is the same as

2      the one that was sent in an unsigned form to my chambers?

3              MS. DAVIS:  Yes, your Honor.

4              THE COURT:  Then I am going to mark this as Government

5      Exhibit 1 and we will come back to this a little later on in

6      this proceeding.

7              Mr. Madison, before accepting your guilty plea, I am

8      going to ask you certain questions so that I can establish to

9      my satisfaction that you wish to plead guilty because you are

10     guilty and not for some other reason.  If you don't understand

11     any of my questions and you would like a further opportunity to

12     consult with your attorney, will you please let me know?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Are you able to speak and understand

15     English?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Ms. Hummel, will you place Mr. Madison

18     under oath.

19             THE DEPUTY CLERK:  Yes, your Honor.

20             (Defendant sworn)

21             THE COURT:  Mr. Madison, do you understand that you

22     are now under oath and that if you answer any of my questions

23     falsely, your answers to my questions may be used against you

24     in another prosecution for perjury?

25             THE DEFENDANT:  Yes, your Honor.

F16UMADP

1              THE COURT:  What is your full name?

2              THE DEFENDANT:  Robert Todd Madison.

3              THE COURT:  How old are you?

4              THE DEFENDANT:  43.

5              THE COURT:  How far did you go in school?

6              THE DEFENDANT:  Bachelor of arts degree.

7              THE COURT:  Where was that?

8              THE DEFENDANT:  George Washington University.

9              THE COURT:  Have you ever been treated or hospitalized

10   for any mental illness?

11              THE DEFENDANT:  No, your Honor.

12              THE COURT:  Are you now or have you recently been

13   under the care of a doctor or a psychiatrist?

14              THE DEFENDANT:  No, your Honor.

15              THE COURT:  Have you ever been hospitalized or treated

16   for any addiction to drugs or to alcohol?

17              THE DEFENDANT:  No, your Honor.

18              THE COURT:  In the past 24 hours, have you taken any

19   drugs, medicine or pills or drunk any alcoholic beverages?

20              THE DEFENDANT:  Yes, your Honor.

21              THE COURT:  When was that?

22              THE DEFENDANT:  I take a laundry list of

23   medications -- metformin, simvastatin, lantus which is an

24   insulin, and Xanax, but I have not taken Xanax in two days.

25              THE COURT:  What are those medications for?

F16UMADP

```
 1              THE DEFENDANT:  For my diabetes, high blood pressure
 2    and high cholesterol.
 3              THE COURT:  Do any of them impede your ability to
 4    understand what is being said to you?
 5              THE DEFENDANT:  No, your Honor.
 6              THE COURT:  Do any of them impair your ability to
 7    communicate?
 8              THE DEFENDANT:  No, your Honor.
 9              THE COURT:  Is your mind clear today?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  Do you understand what is happening in
12    this proceeding?
13              THE DEFENDANT:  Yes, your Honor.
14              THE COURT:  Do either counsel have any doubt as to the
15    defendant's competence to plead at this time?
16              MR. RIOPELLE:  No, your Honor.
17              MS. DAVIS:  No, your Honor.
18              THE COURT:  Based on Mr. Madison's responses to my
19    questions, based on his demeanor as he appears before me and as
20    corroborated by counsel and independent assessment, I find that
21    Mr. Madison is competent to enter a plea of guilty at this
22    time.
23              Mr. Madison, have you had a sufficient opportunity to
24    discuss your case with your attorney?
25              THE DEFENDANT:  Yes, your Honor.
```

F16UMADP

| | |
|---|---|
| 1 | THE COURT:  Have you had a sufficient opportunity to |
| 2 | discuss the charge to which you intend to plead guilty, any |
| 3 | possible defenses to that charge and the consequences of |
| 4 | entering a plea of guilty? |
| 5 | THE DEFENDANT:  Yes, your Honor. |
| 6 | THE COURT:  Are you satisfied with your attorney's |
| 7 | representation of you, including your attorney's representation |
| 8 | in connection with entering into the plea agreement that I have |
| 9 | marked as Government Exhibit 1? |
| 10 | THE DEFENDANT:  Yes, your Honor. |
| 11 | THE COURT:  I am now going to explain certain |
| 12 | constitutional rights that you have.  You will be giving up |
| 13 | these rights if you enter a plea of guilty. |
| 14 | Under the Constitution and laws of the United States, |
| 15 | you are entitled to a speedy and a public trial by a jury on |
| 16 | the charges contained in the indictment.  Do you understand |
| 17 | that? |
| 18 | THE DEFENDANT:  Yes, your Honor. |
| 19 | THE COURT:  At a trial you would be presumed to be |
| 20 | innocent and the government would be required to prove you |
| 21 | guilty by competent evidence beyond a reasonable doubt before |
| 22 | you could be found guilty.  You would not have to prove that |
| 23 | you were innocent, and a jury of 12 people would have to agree |
| 24 | unanimously that you were guilty.  Do you understand that? |
| 25 | THE DEFENDANT:  Yes, your Honor. |

F16UMADP

1          THE COURT:  At that trial and at every stage of the

2     case, you would be entitled to be represented by an attorney,

3     and if you could not afford one, one would be appointed to

4     represent you free of charge.  Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  During a trial the witnesses for the

7     government would have to come to court and testify in your

8     presence and your lawyer could cross-examine the witnesses for

9     the government, object to evidence offered by the government,

10    and if you desired, issue subpoenas, offer evidence and compel

11    witnesses to testify on your behalf.  Do you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  At a trial, although you would have the

14    right to testify if you chose to, you would also have the right

15    not to testify and no inference or suggestion of guilt could be

16    drawn from the fact that you did not testify if that was what

17    you chose to do.  Do you understand that?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  At trial the government would have to

20    prove each and every part or element of the charge beyond a

21    reasonable doubt for you to be convicted of that charge.  Do

22    you understand that?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Do you understand that if you were

25    convicted at a trial, you would have the right to appeal that

F16UMADP

1    verdict?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Even at this time, right now, even as you

4    are in the process of entering a plea of guilty, you have the

5    right to change your mind, plead not guilty and go to trial.

6    Do you understand that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  If you plead guilty and I accept your

9    plea, you will give up your right to a trial and the other

10   rights I have just described, there will be no trial and I will

11   enter a judgment of guilty and sentence you on the basis of

12   your guilty plea after considering whatever submissions I

13   receive from you and your counsel and the government and after

14   receiving a presentence report prepared by the probation

15   department.  Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  If you plead guilty, you will also have to

18   give up your right not to incriminate yourself because I am

19   going to ask you some questions about what you did in order to

20   satisfy myself that you are guilty as charged.  Do you

21   understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Mr. Madison, have you received a copy of

24   the indictment containing the charges against you?

25             THE DEFENDANT:  Yes, your Honor.

F16UMADP

1        THE COURT:  Have you read it?

2        THE DEFENDANT:  Yes, your Honor.

3        THE COURT:  Have you discussed it with Mr. Riopelle?

4        THE DEFENDANT:  Yes, your Honor.

5        THE COURT:  You are charged in Count 2 with conspiracy

6   to commit honest services fraud in violation of Title 18,

7   United States Code, Section 1346.  Do you understand that?

8        THE DEFENDANT:  Yes, your Honor.

9        THE COURT:  Do you understand that the maximum

10  possible penalty for this crime is 20 years' imprisonment?

11       THE DEFENDANT:  Yes, your Honor.

12       THE COURT:  The maximum fine for this crime is the

13  greatest of $250,000, twice the gross pecuniary gain derived

14  from the offense or twice the gross pecuniary loss to a person

15  other than you as a result of the offense.  Do you understand

16  that?

17       THE DEFENDANT:  Yes, your Honor.

18       THE COURT:  For pleading guilty to this crime, you

19  will be required to pay a mandatory $100 special assessment.

20  Do you understand that?

21       THE DEFENDANT:  Yes, your Honor.

22       THE COURT:  For pleading guilty to this crime, you may

23  be required to pay restitution to any person injured as a

24  result of your criminal conduct.  Do you understand that?

25       THE DEFENDANT:  Yes, your Honor.

F16UMADP

1          THE COURT:  I understand there is a provision in the

2     plea agreement that speaks more specifically to that, and we

3     will get to that in a few minutes.

4          For pleading guilty to this crime, you may be

5     compelled to forfeit any and all property constituting or

6     derived from proceeds obtained by your criminal conduct.  Do

7     you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  For pleading guilty to this crime, you may

10     receive a term of up to three years' supervised release.

11     Supervised release means that you will be subject to monitoring

12     when you are released from prison.  There are terms of

13     supervised release with which you must comply.  If you don't

14     comply with them, you could be returned to prison for the

15     remainder of your term of supervised release without a jury

16     trial.  You will be given no credit on that sentence for the

17     time that you served in prison as a result of your sentence for

18     this crime, and no credit for any time spent on post-release

19     supervision.  Do you understand that?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  Do you understand further that if I accept

22     your guilty plea and adjudge you guilty, that may derive you of

23     valuable civil rights such as the right to vote, the right to

24     hold public office, the right to serve on a jury and the right

25     to possess any kind of firearm?

F16UMADP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Are you a United States citizen?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Now, under current law, there are

5     sentencing guidelines as well as other factors set forth in the

6     sentencing statute that a judge must consider in determining a

7     sentence.  Do you understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  Have you spoken with your attorney about

10    the sentencing guidelines and those other factors?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that the Court will not

13    be able to determine the guideline range that will form a part

14    of my determination of what a reasonable sentence is in your

15    case until after a presentence report has been prepared and

16    until after you and your attorney and the government's attorney

17    have all had the chance to challenge any of the facts reported

18    in that report by the probation officer?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Do you understand that even though the

21    government has provided you with its current calculation of

22    your sentence under the sentencing guidelines and even though

23    the parties have stipulated to the accuracy of that

24    calculation, that sentencing range between 33 and 41 months'

25    imprisonment is not binding on the probation department and is

F16UMADP

1    not binding on the Court?

2                 THE DEFENDANT:  Yes, your Honor.

3                 THE COURT:  Do you understand that even after the

4    Court has determined what guideline range applies to your case,

5    the Court has the discretion under the current law to impose a

6    sentence that is higher or lower than the one suggested by the

7    guidelines?

8                 THE DEFENDANT:  Yes, your Honor.

9                 THE COURT:  And do you understand that if your

10   attorney or anyone else has attempted to predict what your

11   sentence will be, that prediction could be wrong?  No one, not

12   your attorney, not the government's attorney -- no one can give

13   you any assurance of what your sentence will be because I am

14   going to decide your sentence and I am not going to do that

15   now.  I really cannot do that now.  Instead, I am going to wait

16   until I receive the presentence report prepared by the

17   probation department.  I am going to do my own independent

18   calculation of how the sentencing guidelines apply to your

19   case.  I am going to read thoughtfully the sentencing

20   submissions I receive from each side.  Most of all, I am going

21   to determine what a reasonable sentence is for you based on all

22   of the factors set forth in the sentencing statute which is

23   known as Section 3553(a).  Do you understand all that?

24                 THE DEFENDANT:  Yes, your Honor.

25                 THE COURT:  Have you discussed these issues and the

F16UMADP

1    overall sentencing process with your attorney?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Even if your sentence is different from

4    what your attorney or anyone else has told you it might be,

5    even if it is different from what you expect, even if it is

6    different from the guideline range that is stipulated to in

7    your plea agreement, you would still be bound by your guilty

8    plea and you would not be allowed to withdraw your plea of

9    guilty.  Do you understand that?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Has anyone threatened you or anyone else

12   or forced you in any way to plead guilty?

13             THE DEFENDANT:  No, your Honor.

14             THE COURT:  Now, counsel have handed up Government

15   Exhibit 1, the plea agreement.  Had you read this agreement at

16   the time you signed it?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  I guess I ought to step back and make sure

19   that you have in fact signed it.

20             Ms. Davis, I see here your signature on the last page.

21   Is that your signature?

22             MS. DAVIS:  It is, your Honor.

23             THE COURT:  I see as well the signature of Richard

24   Tarlowe, the chief of Complex Frauds and Cybercrime unit here

25   in the Southern District.  Is that his signature?

F16UMADP

1          MS. DAVIS:  It is, your Honor.

2          THE COURT:  Mr. Riopelle, I see your signature dated

3    December 9.  Is that your signature?

4          MR. RIOPELLE:  It is, Judge.

5          THE COURT:  And, Mr. Madison, I see your signature

6    dated December 8.  Is that your signature?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  So before you signed this agreement, had

9    you read it?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  And had you discussed it with Mr. Riopelle

12   before you signed it?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  Did you believe that you understood the

15   agreement before you signed it?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Did you willingly sign the plea agreement?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Did anyone force you to sign it?

20         THE DEFENDANT:  No, your Honor.

21         THE COURT:  Ms. Davis, will you kindly summarize the

22   material terms of the plea agreement.

23         MS. DAVIS:  Your Honor, Mr. Madison is agreeing to

24   plead guilty to Count 2 of the plea agreement which charges a

25   conspiracy to commit honest services fraud.  In consideration,

F16UMADP

1   the defendant will not be further prosecuted for any crimes

2   relating to the said conspiracy, any payments to any current or

3   former partners or employees of Access Communications and a

4   conspiracy to defraud Access Communications Advisor

5   Pharmaceuticals through the submission of fraudulent invoices

6   from November 2004 through 2009.

7             Also, at the time of sentencing, the government will

8   dismiss any open counts against the defendant.

9             There is a stipulation regarding restitution of $1.416

10  million to be ordered jointly and severally with any

11  co-defendants to Access Communications on a payment schedule to

12  be determined by the Court after considering the defendant's

13  financial circumstances.

14            There is also a stipulation regarding the guidelines

15  range, stipulated that the total offense level is a 20, that

16  the criminal history category is a I and that the stipulated

17  guidelines range is 33 to 41 months with the applicable fine

18  range of that guidelines of 7,500 to 75,000 dollars.

19            The parties further agree that neither a downward or

20  upward departure from the sentencing guidelines is warranted or

21  that they will seek any departure or adjustment pursuant to the

22  guidelines other than what is set forth in the plea agreement,

23  but that either party may seek a sentence outside of the

24  stipulated guidelines range based on the 3553(a) factors.

25            The plea agreement also doesn't limit the rights of

F16UMADP

1   parties to present information to the Court or to the probation

2   office or limit the right of the government to seek denial of

3   an adjustment for acceptance of responsibility if the defendant

4   fails to clearly demonstrate acceptance of responsibility

5   through the allocution and subsequent conduct prior to the

6   imposition of sentence or for the government to seek an

7   obstruction of justice enhancement should the defendant engage

8   in conduct subsequent to the plea that would constitute

9   obstruction of justice.

10          The plea agreement also provides for an appeal waiver.

11   That is the standard for the U.S. Attorney's office, but it

12   does not include a waiver of this defendant's right to appeal

13   on the basis of ineffective assistance of counsel.

14          THE COURT:  Very good.  Thank you.  That was very

15   helpful.

16          Mr. Riopelle, are you in agreement with the

17   government's summary of those terms?

18          MR. RIOPELLE:  Yes, your Honor.

19          THE COURT:  Mr. Madison, did you hear and understand

20   what Ms. Davis said when she summarized those terms of the plea

21   agreement?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Let me just highlight a couple of points

24   in the plea agreement.

25          As Ms. Davis states, the parties have stipulated that

F16UMADP

1     the guidelines call for a sentence here between 33 and 41

2     months.  I want to make sure you understand that that

3     stipulation binds the parties here, but it doesn't bind me

4     because I have to make my own independent calculation of how

5     the guidelines apply.  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Do you understand as well that under the

8     agreement, you are giving up your right to ask within this

9     guidelines framework that I depart below that guideline range,

10    but you are not giving up your right to ask for a

11    below-guideline sentence based on the broader set of factors

12    relevant to Section 3553(a)?  Do you understand that?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Do you also understand that under the plea

15    agreement, you are agreeing to pay jointly and severally with

16    your co-defendants an amount of restitution in the total amount

17    of $1.416 million on a payment schedule to be set by me?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Finally, do you understand that under the

20    agreement, you are giving up your right to appeal or otherwise

21    challenge your sentence so long as I don't sentence you to more

22    than 41 months in prison?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Do you have any agreement with the

25    government about your plea or your sentence that has been left

F16UMADP

1    out of this written agreement?

2              THE DEFENDANT:  No, your Honor.

3              THE COURT:  Has anyone made any promise or done

4    anything other than what is contained in this plea agreement to

5    induce you to plead guilty?

6              THE DEFENDANT:  No, your Honor.

7              THE COURT:  Has anyone made a promise to you as to

8    what your sentence will be?

9              THE DEFENDANT:  No, your Honor.

10             THE COURT:  Do you understand this agreement doesn't

11   bind any federal, state or local prosecuting authority other

12   than the United States Attorney?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Do you still wish to plead guilty pursuant

15   to this agreement?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  At this point I would like to ask you to

18   tell me in your own words what you did that makes you believe

19   you are guilty of the charge in the indictment.

20             MR. RIOPELLE:  Just so that the record is clear, your

21   Honor, we have prepared a written allocution which has been

22   reviewed by the government, and I believe that the government

23   agrees that it is sufficient to satisfy the elements of Count

24   2.  Because it is a somewhat complex crime, it is easier to do

25   it this way.

F16UMADP

1          THE COURT:  I am totally fine with that.

2          Mr. Madison, I just want to make sure that you are

3     comfortable with the factual accuracy of everything that is set

4     forth in what you are about to read?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Go ahead.

7          THE DEFENDANT:  During the period from 2004 to 2009, I

8     owned two businesses in Phoenix, Arizona.  One was a printing

9     business named Creative Press, the other was a vending company

10    named East Coast Vending.

11         On many occasions from 2004 to 2009, Creative Press

12    was hired by a business named Access Communications to produce

13    printed materials for direct mail advertising.  The direct mail

14    advertising all related to mailings that Creative Press was

15    hired to make to union members and their doctors all over the

16    country.  The mailings were meant to promote the sale of

17    particular prescription drugs.

18         I knew that Access Communications was owned by Michael

19    and Matthew Mitrow.  When I began dealing with Access, I knew

20    that, and later on Access Communications had been bought by

21    another company.  After Access Communications was bought, I

22    knew that Michael and Matthew Mitrow continued to be employed

23    as executives of Access.

24         During the time between to 2004 and 2009, Access

25    Communications often forwarded payments to me to pay for the

F16UMADP

mailings that I had been hired by Access to do.  Often, these
payments were sent to me before the mailings were made because
the cost of the mailings was high, and I did not have the cash
surplus in Creative Press's bank account to pay for the
mailings Access Communications had ordered.

On many occasions between 2004 and 2009, Matt Mitrow,
Joe Uzzolino and other employees of Access Communications
contacted me and cancelled the mailings after sending me the
funds I needed to pay for the mailings Access Communications
had ordered.  In addition, on some occasions, Matt Mitrow, Joe
Uzzolino and other employees of Access Communications contacted
me and cancelled parts of print jobs after it had paid for
them; as a result, my company, Creative Press, had excess cash,
because the mailings my company had been hired to make were not
actually made and print jobs my company was expecting to
produce had been cancelled.  As a result of Access
Communications' cancellations of jobs it had already paid for,
my company did not have to pay the postage it expected it would
pay or produce all the printed materials it originally expected
to produce.

When they cancelled a mailing or a print job, Matthew
Mitrow, Joe Uzzolino and other employees of Access
Communications would usually contact me by telephone.  In
addition, I communicated by email with both Michael and Matthew
Mitrow about getting advance payment for mailings and print

F16UMADP

1   jobs that my company had been asked to produce for Access

2   Communications.  At the time, Access Communications was located

3   in New Jersey, and I and my business were located in Phoenix,

4   Arizona.

5           Neither Matthew Mitrow nor anyone else from Access

6   asked me to return the excess cash that my company had received

7   in connection with mailings it never made and print jobs it

8   never produced; instead, I was asked to pay a variety of

9   different bills for the Mitrows and other executives at Access,

10  and I had my companies do that.  For example, Michael Mitrow

11  asked me to pay for his charter jet travel, and I had my

12  companies do that.  Matthew Mitrow asked me to pay for

13  renovations on his house, and I had my companies do that.  When

14  I had my companies make these payments, it was my intention to

15  continue the business relationship between Creative Press and

16  Access Communications, which I understood was controlled by

17  Michael and Matthew Mitrow, even after it was bought by another

18  company.  I also knew that some of the mailings and print jobs

19  that had originally been requested by Access Communications

20  were never made.

21          In some cases, I had East Coast Vending pay bills for

22  the Mitrows, even though East Coast Vending did not do printing

23  work for Access.  For example, I had East Coast vending pay

24  some of the charter jet bills that Michael Mitrow asked me to

25  pay.  At the time that I had East Coast Vending pay these

F16UMADP

1    bills, I knew that it would be difficult for someone from

2    Access Communication to trace those payments back to me because

3    the employees at Access Communications only dealt with Creative

4    Press.  When I had my companies pay bills for the Mitrow

5    brothers, I had them mail the checks and send wire transfers to

6    the vendors that Michael and Matthew Mitrow asked me to pay.

7          At the time I had my companies pay bills for the

8    Mitrows, I knew that what I was doing was wrong because I knew

9    that Creative Press had been paid for mailings it did not make

10   and it had been paid for print jobs it had not produced.  I

11   knew that Creative Press should have returned that money to

12   Access Communications instead of paying the Mitrows' bills.

13         I have discussed the concept of venue with my

14   attorney --

15         MR. RIOPELLE:  Just for the record, Judge, I think

16   that the government can represent to the Court that there is

17   proper venue in the Southern District.  The client does not

18   have a memory of the events there that give the Court venue, so

19   I have asked him to make a statement waiving venue for the

20   purposes of these proceedings.

21         THE COURT:  Thank you.

22         Go ahead.

23         THE DEFENDANT:  I have discussed the concept of venue

24   with my attorney.  I know that venue means I have the right to

25   have my case tried in a district court where my crime occurred.

F16UMADP

1    To the extent it is necessary, I waive my right to have the

2    crime charged in Count 2 of the indictment tried in Arizona or

3    in New Jersey where Access Communications is located.

4              THE COURT:  Very good.

5              You said a moment ago that you knew what you were

6    doing was wrong.  Did you also know that you were committing a

7    crime?

8              THE DEFENDANT:  I knew it was wrong and therefore I

9    shouldn't be doing it.  I didn't know at the time it was

10   criminal.  I knew it was a bad decision.  I have since --

11             THE COURT:  It is not required that a defendant know

12   the specific statute that he or she is violating, but it is

13   ordinarily the case that I ask and the answer is yes, that a

14   defendant who is pleading guilty acknowledges that they knew

15   they were committing a crime.

16             Mr. Riopelle, perhaps you can just take a moment with

17   your client.

18             (Discussion off the record between defendant and

19   counsel)

20             THE DEFENDANT:  My answer is yes, your Honor.

21             THE COURT:  Thank you.

22             Are you pleading guilty voluntarily and of your own

23   free will and because you are in fact guilty?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Does government counsel agree that there

F16UMADP

1   is a sufficient factual predicate for a guilty plea?

2            MS. DAVIS:  Yes.  I would just note for the record,

3   your Honor, that with regard to venue --

4            THE COURT:  I was about to ask you.

5            MS. DAVIS:  -- the government would be prepared to

6   prove that Access Communications' bank account was located in

7   the Southern District of New York and at least one check to a

8   vendor was mailed to the Southern District of New York.

9            THE COURT:  Very good.  Thank you.

10           Mr. Riopelle, you don't dispute that, do you?

11           MR. RIOPELLE:  No, not at all.  It is just that my

12   client doesn't have the knowledge --

13           THE COURT:  Understood.  I appreciate the care you

14   took with the plea allocution and particularly that point.

15           Does defense counsel agree that there is a sufficient

16   factual predicate for a guilty plea?

17           MR. RIOPELLE:  I do, your Honor.

18           THE COURT:  Ms. Davis, just to be clear, because of

19   the fact of the Skilling decision, I take this fits under the

20   kickback box and, therefore, there is no Skilling problem here?

21           MS. DAVIS:  Correct, your Honor.

22           THE COURT:  Does defense counsel know of any valid

23   defense that would prevail at trial or any reason why your

24   client should not be permitted to plead guilty?

25           MR. RIOPELLE:  No, your Honor, I do not.

1          THE COURT:  Mr. Madison, because you acknowledge that

2     you are in fact guilty as charged in the indictment, because I

3     am satisfied that you know of your rights including your right

4     to go to trial, because I am satisfied that you are aware of

5     the consequences of your plea, including the sentence which may

6     be imposed and because I find that you are voluntarily pleading

7     guilty, I accept your guilty plea and I enter a judgment of

8     guilty on the one, Count 2, to which you have pled guilty.

9          The next step in your case, as you know, is the

10     sentencing process, and I will ask you to pay close attention

11     to the following.

12          The probation department is going to want to interview

13     you in connection with the presentence report that it will

14     prepare.  If you choose to speak with the probation department,

15     please make sure that anything you say is truthful and

16     accurate.  I read those reports very carefully.  They are often

17     very important to me in determining what a reasonable sentence

18     is in a particular case.

19          You and your counsel have a right to examine the

20     report and to comment on it at the time of sentencing.

21          I urge you to read it and discuss it carefully with

22     Mr. Riopelle.  If there are any mistakes in it, please point

23     them out to Mr. Riopelle so that he can bring them to my

24     attention before sentencing.  Will you agree to do that?

25          THE DEFENDANT:  Yes, your Honor.

F16UMADP

| 1 | THE COURT:  Mr. Riopelle, is this a case in which your |
| 2 | client is seeking an expedited sentence? |
| 3 | MR. RIOPELLE:  No, your Honor. |
| 4 | THE COURT:  Let me confer with my law clerk as to a |
| 5 | sentencing date. |
| 6 | (Pause) |
| 7 | THE COURT:  How would Friday morning, May 29th, work? |
| 8 | Does anyone have a problem with that? |
| 9 | MR. RIOPELLE:  That's fine with us. |
| 10 | THE COURT:  Ms. Davis, I know you are coming from |
| 11 | Washington, correct? |
| 12 | MS. DAVIS:  If I could just have one moment, your |
| 13 | Honor? |
| 14 | THE COURT:  If Friday is an issue, we can work around |
| 15 | it. |
| 16 | MR. RIOPELLE:  How does that relate to Memorial Day? |
| 17 | That's my question. |
| 18 | THE COURT:  That is after Memorial Day.  I was |
| 19 | sensitive to that. |
| 20 | MS. DAVIS:  Fine, your Honor. |
| 21 | THE COURT:  Why don't we say 9:30 a.m. on Friday, May |
| 22 | 29th.  If counsel uncover a problem, I am happy to move that |
| 23 | date. |
| 24 | Sentencing is set then for that date and time. |
| 25 | Defense counsel, you must arrange for your client to |

F16UMADP

1   be interviewed by the probation department within the next two

2   weeks.

3           Ms. Davis, you should provide your case summary to the

4   probation department also within the next two weeks.

5           Defense submissions in connection with sentencing are

6   due two weeks before sentencing.

7           The government's submission is due one week before.

8           If you go on the SDNY web site, you will find copies

9   of my individual rules with respect to the filing with the

10  clerk of court a sentencing submission.

11          What is the defendant's bail status?

12          MR. RIOPELLE:  I believe that he is released on his

13  own recognizance.

14          THE COURT:  And is there any objection to that

15  continuing?

16          MS. DAVIS:  No, your Honor.

17          THE COURT:  Then I am happy to continue those terms.

18          Mr. Madison, do you understand that all of the

19  conditions on which you have been released until now continue

20  to apply and that a violation of any of those conditions can

21  have very serious consequences for you at the time of

22  sentencing?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  In particular, you must be in this

25  courtroom for sentencing at the time and date set or you will

F16UMADP

1    be guilty of a separate crime called bail jumping and subject

2    to a fine or a prison term in addition to whatever sentence you

3    may receive for the crime to which you have just pled guilty.

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  Do you understand that?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  Anything further from the government?

8              MS. DAVIS:  No, your Honor.

9              THE COURT:  Anything further from the defense?

10             MR. RIOPELLE:  No, Judge.  Thank you.

11             THE COURT:  Thank you.

12             We stand adjourned.

13             Counsel, here is the plea agreement back.

14

15                              o    0    o

16

17

18

19

20

21

22

23

24

25